We will take time to consider of the plea, and give judgment some time before the end of the term.
After a few days they gave judgment: All persons in general (344) as well foreigners as citizens, may come into this Court to recover rights withheld, and to obtain satisfaction for injuries done, unless where they are subject to some disability the law imposes. Foreigners are in general entitled to sue, unless a war exists between our country and theirs. Section 101, 1777, ch. 2, is certainly repealed as to all British subjects, by article 4 of the treaty, which is to be regarded as law paramount, the acts of any State Legislature to the contrary, until that treaty shall become suspended by the sovereign authority entrusted with the power to suspend it. Each department of Government empowered to do a sovereign act relative to the affairs of the Government must in doing that act establish what the whole people, and every State, must be bound by as done by competent authority. It is also repealed by 1787, ch. 1, declaring this article to be a part of the law of the land. As to British subjects, it is very much to be doubted whether the mere act of terminating the war by a treaty of peace did not repeal this clause. That restores them with regard to this country, to the condition of alien friends, and to all the rights belonging to that character, one of which is the right of commencing a prosecution. It is incompatible with a state of national friendship, and is a cause for war, if the citizens of another country are not allowed to sue for and obtain redress of wrongs in our courts. But however this may be, British subjects, by article 4 of the treaty, are to be entitled to recover their debts, and this they cannot do without instituting suits. Quando aliquid conceditur, conceditur ut id,sine qua non prevenitur ad illud. The plaintiff is not stated by the plea to have been a citizen; we cannot say he was, but say he was a citizen, the laws may suspend the right of suing for a certain time, or until a certain period, either to all the citizens with respect to certain cases, as was done in 1783, or to a description of citizens coming under particular circumstances, as citizens, for instance, who had notoriously joined the enemies of the country. It would have been equally impolitic to have suffered them to recover in the time of war, although they could not be arrested so as to be convicted of treason, as to have suffered a British subject to recover. The reason for excluding the latter applied with equal force to the exclusion of the former. The fact of joining the enemy, upon a plea in disability, might be ascertained by a jury as well as any other fact. This would not be ascertaining a fact for the purpose of punishing the party for his treason, but for the purpose of excluding him for the present from our courts of justice, (345) *Page 266 
in the same manner as the fact of being an alien enemy is found, and operates when found. This clause seems to have been made with a view to the war then carrying on, to prevent those inimical to us from getting into their possession any of the wealth of the country, which might enable them to fight us with more advantage. Considering it in this light, it would seem as if the clause itself should expire with the war, the terminating that being a providing otherwise within the words of the act, and that termination effected by those who were vested with power to do that act of sovereignty that was absolutely binding upon every State, notwithstanding any particular act of the State Legislature to the contrary remaining unrepealed by the State Legislature. But there are sundry acts of the Legislature which have repealed this clause with respect to the greater number of citizens who had fallen under its operation. By 1783, ch. 6, all manner of treasons, misprisions of treason, felony or misdemeanor, committed since 4 July, 1776, are pardoned and put in total oblivion; but that act is not to pardon or discharge, or give any benefit to persons who have taken commissions, or have been denominated officers, or acted as such, or to such as have attached themselves to the British and continued without the limits of the State, and returned within twelve months before the passing the act; and nothing in that act is to be so construed as to bar any citizen from his civil action for the recovery of debt or damages. By this act all the citizens of the State are pardoned all treasons and misdemeanors, except those who have borne offices in the enemy's service, or, having been in their service as private men, had not returned within twelve months before the passing the act. Now, if a disability to sue is inflicted as a punishment for attaching himself to the enemy, then the pardoning of that must of course take away the disability. Quando subtollitur causa, subtollitur etiameffectus. Then section 101 is repealed as to all citizens but those of the two descriptions mentioned in the act. By 1784, ch. 20, all persons who attached themselves to the enemy, or aided them in the prosecution of the war, are disabled to hold sundry offices specified in the act; and there is a proviso annexed that that act shall not be so construed as to permit the return to the State of any person who acted as an officer after being a resident of the State, or who had not submitted to the laws of (346) the State before the ratification of the definitive treaty. The Legislature supposed, and therefore probably intended, that the general implication arising from this act would be that all persons therein described would be entitled to all the rights of citizens except those denied them in the act, and of course the right to return to this State, unless hindered by an express clause, which they have made as to officer only. If such general implication was intended, and is restrained only as to *Page 267 
officers, it follows that all other persons are restored to all the rights of citizenship except the right of being elected to certain offices; and then section 101 of 1777, ch. 2, is repealed as to all but those who had borne commissions in the enemy's service, and particularly as to one description of persons who were continued subjects to it by the act of 1783, namely, those who had attached themselves to the enemy and remained without the limits of the State, and had not returned twelve months before 18 April, 1783. To the same effect with the act of 1784 is the act of 1785, ch. 11. Supposing the plaintiff to have been a citizen who attached himself to the enemy, without having borne a commission in their service, or having borne a commission, to have submitted to the laws of the State before the ratification of the definitive treaty, he is entitled, upon the construction of all these acts, now to institute his suit; and this plea does not state either that he bore a commission or that he did not submit to the laws of the State before the ratification of the definitive treaty. It is unnecessary to consider how far the section in question is repealed by the termination of the war, independent of any particular acts of the Legislature, for if the plaintiff was a citizen, then make the worst of the case, and by the acts mentioned section 101 is repealed as to him, it not being pretended that he is to be distinguished by either of the disqualifying characters before mentioned. If he was a British subject, then his right to sue for antecedent debts is revived by article 4 of the treaty, and this is such a debt. Let the plea in abatement be overruled, and the defendant answer over.
There were several cases depending in this Court upon the same pleas, and upon this opinion of the Court being given, the pleas were withdrawn and the defendants pleaded in chief.
At Hillsboro, October, 1796, the first three causes on the argument docket were standing upon pleas in abatement, and demurrer thereto for the same cause, and the pleas were overruled (WILLIAMS and HAYWOOD, JJ.), without argument, upon the authority of the (347) foregoing decision. Also at Fayetteville, 1796, a client of Mr. Williams, who had joined the enemy in the time of the late war, and who had given notice of moving for a writ of error, was suspended by a plea in disability. That plea was now overruled, and he was set at liberty to proceed. *Page 268